IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Barbara Callaway, | ) | CASE NO. 1:18-cv-01981 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANTS' REPLY IN SUPPORT OF** |
| DenOne LLC, et al, | ) | **THEIR MOTION FOR PARTIAL JUDGMENT** |
| | ) | **ON THE PLEADINGS** |
| Defendants. | ) | |

Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment on the Pleadings offers no basis for this Court to deny that Motion. Instead of accepting that the DOL's November 8, 2018 Opinion Letter abrogated Counts II and III of her Complaint, Plaintiff misstates the applicable law, cites to regulations that have nothing to do with the issues at bar, and otherwise rehashes the very confusion that the Opinion Letter was expressly issued to resolve. Plaintiff's arguments are misplaced. Many courts have held that the purported 80/20 rule upon which Plaintiff attempts to rest her claims is unworkable, thereby resulting in the confusion that was corrected by the Opinion Letter. Plaintiff's claims, which are based on such rule, fail because there is no longer any basis for the Court to impose a 20% limitation on the amount of time that Plaintiff may spend performing any work.

Because none of Plaintiff's arguments have any merit, Defendants are entitled to judgment as to Counts I, II, and III of Plaintiff's First Amended Complaint.

**I.      Factual Background**

      **A.      The Purported 80/20 Rule is Not Founded in Governing Law.**

In 1966, Congress enacted a "tip credit" provision as part of the FLSA. *See* Pub. L. No. 89-601, §§ 101(a), 201(a), 80 Stat. 830 (1966). The "tip credit" provision generally allows

employers under certain circumstances to receive credit toward a portion of their minimum wage obligation for tips that employees receive. *See* 29 U.S.C. § 203(m). By the very terms of the FLSA itself, a tipped employee is "any employee *engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t) (emphasis added). Notably, that provision of the FLSA does not include an 80/20 Rule.

In 1967, the Department of Labor ("DOL")'s Wage and Hour Division ("WHD") issued regulations addressing tipped employment, including 29 C.F.R. § 531.56(e). Like the FLSA, Section 531.56(e) does not include an 80/20 rule. Rather, it sets forth a general rule that tipped occupations may involve a mix of tasks, and that performing "related duties" to a tipped occupation does not jeopardize the tip credit. *See id*. ("Such related duties in an occupation need not by themselves be directed toward producing tips.").

### B. The DOL's Sub-Regulatory Guidance has Been Inconsistent With Respect to the 80/20 Rule.

Since § 531.56(e) was enacted in 1967, the DOL has issued several interpretations of that provision that have been internally inconsistent and lacking any basis in its text. For example, in 1980, the DOL issued an opinion letter addressing whether certain tasks performed by a server after a restaurant closes still qualify for tip credit. U.S. DOL, Wage and Hour Division, Opinion Letter WH-502, 1980 WL 141336 (Mar. 28, 1980). There, the DOL opined that where tasks were not exclusively within the province of employees in *non*-tipped occupations, those tasks should be treated as part of the tipped employee's occupation and, thus, subject to the tip credit. *Id*. at *1.

In 1985, the DOL took a different approach, where a where a waitress in a restaurant was assigned "salad bar and dining room set-up" duties before the restaurant opened for the day, constituting 30-40% of her working time:

> [E]mployees who "customarily and regularly" receive tips are waiters, waitresses, bell persons, counter persons, bus help, and service bartenders. It also indicates that janitors, dishwashers, chefs, and laundry room attendants are not tipped employees. It is our opinion that salad preparation activities are essentially the activities performed by chefs and no tip credit may be taken for the time spent in preparing vegetables for the salad bar . . . .
>
> [T]ip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter or waitress regular duties and are assigned generally to the waiter/waitress staff. However, where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial amount of time in performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities. . . .

U.S. DOL, Wage and Hour Division, Opinion Letter FLSA-854, 1985 WL 1259240, at *2-3 (Dec. 20, 1985). In addition to failing to consider whether work mentioned in the Letter as being non-tipped—*i.e.,* salad preparation—could also be performed by a tipped worker, the December 1985 Opinion letter imposes, without any basis, a quantitative limit on the amount of time an employee in a tipped occupation may spend on certain tasks that the DOL had previously determined fall within such occupation.

In 1988, the WHD changed the language of its Field Operations Handbook to include, for the first time, the 80/20 rule. Notably, the 80/20 rule is still absent from any statute or regulation.

In January 2009, acknowledging that the 80/20 rule was confusing and difficult to apply, the DOL expressly withdrew it in a January 16, 2009 Opinion Letter. *See* U.S. DOL, Wage and Hour Division, Opinion Letter FLSA 2009-23 (Jan. 16, 2009) (available at https://www.dol.gov/whd/opinion/FLSA/2009/2009_01_16_23_FLSA.pdf (last visited Dec. 27, 2018)). In this opinion letter, the DOL "agree[d] that the current FOH [Field Operations Handbook] sections addressing the tip credit have resulted in some confusion and inconsistent

3

application and, as a result, may require clarification." *Id*. at *1. The DOL then clarified its approach to dual jobs in the Letter, and rejected the 80/20 rule:

> We do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met. . . . Accordingly, we believe that the determination that a particular duty is part of a tipped occupation should be made based on the following principles:
>
> Duties listed as core or supplemental for the appropriate tip-producing occupation in the Tasks section of the Details report in the Occupational Information Network (O*NET) http://online.onetcenter.org or 29 C.F.R. § 531.56(e) shall be considered directly related to the tip-producing duties of that occupation. No limitation shall be placed on the amount of these duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties.
>
> Employers may not take a tip credit for time spent performing any tasks not contained in the O*NET task list. We note, however, that some of the time spent by a tipped employee performing tasks that are not listed in O*NET may be subject to the de minimis rule contained in Wage and Hour's general FLSA regulations at 29 C.F.R. § 785.47.
>
> These principles supersede our statements in FOH § 30d00(e). A revised FOH statement will be forthcoming.

*Id*. at *3.

In March 2009, the DOL withdrew the January 2009 Opinion Letter without comment on the correctness or application of the rule. *See* US DOL, Wage and Hour Division, Opinion Letter FLSA 2009-36, 2009 WL 6490551 (Mar. 2, 2009).

Finally, as explained in Defendants' Motion, on November 8, 2018, the DOL issued an Opinion Letter that reinstated the January 2009 Opinion Letter. *See* U.S. DOL, Wage and Hour Division, Opinion Letter FLSA 2018-27, 2018 WL 5921455 at *2-3 (Nov. 8, 2018) ("November 2018 Opinion Letter"). In other words, the DOL again withdrew the 80/20 rule upon which Plaintiff's claims depend. (*See* ECF No. 23-1 at pp. 5-7.)

## II.   Law and Argument

### A.   The November 2018 Opinion Letter Corrects the Interpretation of § 531.56(e).

Plaintiff argues that the November 2018 Opinion Letter does not affect her claims because the Letter does not apply retroactively. That argument misunderstands the nature of Opinion Letters.

The November 2018 Opinion Letter was simply an answer to a question from a member of the public, offered to provide clarity regarding the interpretation of § 531.56(e). *See* November 2018 Opinion Letter, 2018 WL 5921455 at *2-3.  That interpretation, by definition, is both prospective and retroactive. In short, the DOL's position, as expressed in the November 2018 Opinion Letter, is that the DOL's prior guidance about the application of § 531.56(e)—*i.e.,* the 80/20 rule—was an incorrect interpretation. That regulation has not changed since. Thus, if the interpretation of the regulation applying the 80/20 rule is incorrect now, it has always been incorrect—including at all times that Plaintiff has been employed by DenOne. It contradicts common sense for a court to follow guidance that the agency has determined was incorrect when it was issued.

Plaintiff attempts to avoid this result by arguing that the DOL is prohibited from offering retroactive guidance.  However, the cases that Plaintiff cites are inapposite, as they arose in the context of legislative rule-making, whereas no legislative rule is involved here.  Plaintiff also makes the misplaced claim that an employee is "engaged" in an occupation only to the extent she performs duties that are consistent with such expectation, citing 29 C.F.R. § 541.2. (ECF No. 30, p. 4.)  However, the cited regulation deals with the applicability of an exemption under the FLSA, and has nothing whatsoever to do with the tip credit.  Moreover, Plaintiff's unsupported argument that an employee is in an occupation only when she performs duties that are consistent

with that occupation is belied both by the law and logic, since a server's occupation as a server is not contingent upon and parsed out on a minute-by-minute analysis to determine which tasks are consistent with being a server and which are not.

In short, in issuing the November 2018 Opinion Letter, the DOL has merely provided guidance on the correct interpretation and application of Section 531.56(e), which should be followed by the Court, and which warrants the dismissal of Plaintiff's claims.

### B. The November 2018 Opinion Letter is Entitled to Deference.

Nor is there any merit to Plaintiff's contention that the November 2018 Opinion Letter is not entitled to deference. As Plaintiff herself acknowledges, courts typically grant deference to an agency's interpretation of its own regulation. *Ohio Dep't of Medicaid v. Price*, 864 F.3d 469, 477 (6th Cir. 2017) ("The deference accorded to an agency's interpretation of its own ambiguous regulation is substantial and afforded even greater consideration than the *Chevron* deference accorded to an interpretation of an ambiguous statute.") (*quoting Thornton v. Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters Supplemental Ret. and Disability Fund*, 566 F.3d 597, 611 (6th Cir. 2009)). An agency's interpretation is controlling "unless it is 'plainly erroneous or inconsistent with the regulation.'" *Id*. (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

Plaintiff attempts to avoid the consequences of this well-established deference by contending that the November 2018 Opinion Letter is inconsistent with § 531.56(e). However, Plaintiff's argument fails. Plaintiff's position is that the November 2018 Opinion Letter is inconsistent with the text of § 531.56(e) because the November 2018 Opinion Letter does not include any reference to the "how long" analysis purportedly called for by that regulation. (*See* ECF No. 30 at p. 13.) This is not true, as Plaintiff has merely failed to quote the entire relevant portion of the November 2018 Opinion Letter:

> No limitation shall be placed on the amount of these duties that may be performed, whether or not they involve direct customer service, so long as they are performed *contemporaneously with* the duties involving direct customer service to customers or *for a reasonable time immediately before or after performing such direct-service duties*.

November 2018 Opinion Letter, 2018 WL 5921455 at *3 (emphasis added). The text of the November 2018 Opinion Letter is clear, and it does indeed contain the "how long" requirement questioned by Plaintiff: a server may perform the duties in question "contemporaneously" with customer service duties, or for "a reasonable time immediately before or after"—*i.e.,* a server may perform the core duties listed on O*NET for the amount of time that the server is performing direct customer service duties, or for a reasonable period of time before or after performing direct customer service duties. Contrary to Plaintiff's contention, the November 2018 Opinion Letter does require an analysis that "turns on how long these acts are occurring." (ECF No. 30 at 13.)[1]

Plaintiff's contention that the November 2018 Opinion Letter is not entitled to deference because it represents a departure from prior agency interpretations of § 531.56(e) is also meritless. Given the history of the 80/20 rule—including at least one instance where the rule was withdrawn—Plaintiff cannot reasonably claim unfair surprise. The November 2018 Opinion Letter also does not represent an "arbitrary reversal" by the DOL, as Plaintiff alleges. (ECF No. 30 at p. 11, n.3.) Instead, the very text of the letter reveals that the original purpose of the interpretation was to clarify *the confusion caused by conflicting court decisions* that had applied the relevant provision of the Field Operations Handbook in different ways:

---

[1] Indeed, Plaintiff acknowledges that the November 2018 Opinion Letter contains a "how long" requirement when, later in her Opposition, she contends that, even under the standards of that Letter, she and the putative class members can prevail on Count III of her Complaint by "establish[ing] that they performed [duties related to the tipped occupation of server] at times that were not 'contemporaneous' to duties involving direct service-duties or for 'unreasonable' time periods before or after performing such direct-service duties." (ECF No. 30 at pp. 15-16.)

> Section 30d00(e) attempts to ensure that employers do not evade the minimum wage requirements of the Act simply by having tipped employees perform a myriad of nontipped work that would otherwise be done by non-tipped employees. Admittedly, however, it has created some confusion. For instance, in *Fast v. Applebee's Int'l, Inc*., 502 F.Supp.2d 996 (W.D. Mo. 2007), the court construed § 30d00(e) to not only prohibit the taking of a tip credit for duties unrelated to the tip producing occupation, but also to prohibit the taking of a tip credit for duties related to the tip producing occupation if they exceed 20 percent of the employee's working time. Moreover, the court determined that what constitutes a related and non-related duty is a jury determination.
>
> In contrast, in *Pellon v. Business Representation Int'l, Inc*., 528 F.Supp.2d 1306 (S.D. Fla. 2007), *aff'd*, 291 Fed. Appx. 310 (11th Cir. 2008), the court rejected the *Fast* court's reading of FOH § 30d00(e), holding, in part, that the 20 percent limitation does not apply to related duties. The court further held that under the *Fast* ruling, "nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts." *Pellon*, at 1314. Such a situation benefits neither employees nor employers.

November 2018 Opinion Letter, 2018 WL 5921455 at *2-3.

In sum, none of Plaintiff's arguments offer any basis for the Court to decline to grant the November 2018 Opinion Letter the deference to which it is entitled under well-established law. That Opinion Letter abrogates Counts II and III of Plaintiff's First Amended Complaint. Therefore, Defendants are entitled to judgment as to those claims.

    **C.**    **Plaintiff's Remaining Arguments Offer No Basis to Deny Defendants' Motion.**

Plaintiff asserts several additional arguments to try to evade the impact of the Opinion Letter on her claims , but none of them are availing.

For example, Plaintiff contends that, "[e]ven if this Court were to defer to the 2018 Letter and O*Net from November 8, 2018 forward," she "would still be entitled to relief post-November 8, 2018 by proving that she and the Collective Members performed tasks not contained on O*NET's list." (ECF No. 30 at 15.). However, all of the tasks listed in Plaintiff's First Amended Complaint are contained in one form or another in O*NET's list. (*Compare* ECF

8

No. 12, ¶¶ 56, 58 *and Summary Report for 35-3031.00 - Waiters and Waitresses*, *located at* https://www.onetonline.org/link/summary/35-3031.00.)  Therefore, by extension, Plaintiff claims that she can prove that she performed tasks that are not contained in her First Amended Complaint in the first place.  For this reason, Plaintiff's claims should be dismissed, or else she should be required to provide a more definite statement as to what tasks she is referring to.

By the same token, there is no merit to Plaintiff's position that she can still prevail on Count III of the Complaint under the standard of the 2018 Opinion Letter if she can "establish[] that [she] performed [duties related to the tipped occupation of server] at times that were not 'contemporaneous' to duties involving direct service-duties or for 'unreasonable' time periods before or after performing such direct-service duties." (ECF No. 30 at 15-16.)  However, this is not what Plaintiff alleges in her Complaint.  Rather, Count III clearly asserts that Defendants should be held liable under the FLSA because they required Plaintiff "to perform non-tipped labor related to their occupation *in excess of twenty percent (20%) of [her] regular workweek* while paying Plaintiff and the Collective Members at the tip credit rate." (ECF No. 12 at ¶¶ 80, 81, 82.)  Therefore, once again, Plaintiff's Count III is predicated on the now-rejected 80/20 rule and, thus, cannot form the basis of a claim for relief.

Lastly, Plaintiff attempts to discredit O*NET, which stands for the Occupational Information Network, by claiming that it is merely the product of funding through the North Carolina Chamber of Commerce, and that it is defined by "what employers seeking to avail themselves of the tip credit report they are requiring their servers to do," and "what the employees in need of protection by the Act report their employers are requiring them to do." (ECF No. 30, p. 14)  Plaintiff's transparent mischaracterization of O*NET notwithstanding, O*NET is indeed an authoritative list of what employers require their employees in various

9

occupations to perform, and what such employees are required to perform, and it has been regularly looked to and relied upon by both the DOL and courts. As one court explained, "O*NET . . . [is] the federal government's primary source of occupational information." *Horsley v. Comm'r of Soc. Sec.*, No. 1:11CV703, 2013 WL 980315, at *3 (S.D. Ohio Mar. 13, 2013)). Therefore, the DOL had every reason to look to and rely upon O*NET, and thus the November 2018 Opinion Letter is a valid interpretation of the law.

### D. **Plaintiff Does Not Dispute That She Was Notified of the Tip Credit, Thereby Warranting the Dismissal of Count I of Plaintiff's Complaint.**

Lastly, Plaintiff does not dispute that she received the notice attached to Defendants' Answer to her First Amended Complaint, a fact that is sufficient to defeat Count I. *See McLamb v. High 5 Hospitality*, 197 F. Supp. 3d 656, 660, n.1 (D. Del. 2016) (holding that, where plaintiff did not dispute authenticity of tip-credit notice, her claim that the defendant failed to inform her of the tip-credit provision should be dismissed).

Whereas Plaintiff asserts—without legal authority—that Defendants were required to notify her of the tip-credit provision each time there was a change in the minimum wage, nothing in 29 U.S.C. § 203(m) requires an employer to give notice to its employees more than once. *See* 29 U.S.C. 203(m) ("The preceding 2 sentences shall not apply unless such employee has been informed by the employer of the provisions of this subsection."). Plaintiff's attempt to graft an additional requirement onto the notice provision of § 203(m) is thus nothing more than a baseless attempt to avoid dismissal of her claim.

Plaintiff's claim that Defendants have not yet proffered evidence of their notification to the individuals who have filed opt-in forms (ECF No. 30 at p. 16) is equally unavailing, since the

claim at issue was asserted by the Named Plaintiff, Barbara Callaway, and it is indisputable that she does not have a claim that she was never notified of the tip credit provision.

### III. Conclusion

For the foregoing reasons, and for the reasons set forth in Defendants' Motion for Partial Judgment on the Pleadings, Defendants respectfully request that this Court: (1) dismiss Counts I, II and III of Plaintiff's First Amended Complaint; or, in the alternative (2) direct Plaintiff to provide a more definite statement as to what she alleges to be "related" compared to "unrelated" tasks.

Respectfully submitted,

*/s/Daniel L. Messeloff*
Daniel L. Messeloff (0078900)
Melissa Z. Kelly (0077441)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel: 216.592.5000
Fax: 216.592.5009
E-mail: daniel.messeloff@tuckerellis.com
melissa.kelly@tuckerellis.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2018, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/Daniel L. Messeloff*
*One of the Attorneys for Defendants*