UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| BARBARA CALLAWAY, *on behalf of herself and all others similarly situated,* Plaintiff, | : | CASE NO. 1:18-cv-1981 |
| vs. | : | OPINION & ORDER [Resolving Docs. 23, 28, 31, 33, 34] |
| DENONE LLC, *et al.*, Defendants. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff brings this putative collective action alleging that Defendants violated the Fair Labor Standards Act ("FLSA") by paying her a sub-minimum wage. She now moves to conditionally certify a collective action[1] and for leave to amend her complaint.[2]

Defendants move for partial judgment on the pleadings.[3] They also move to strike consent forms, for a protective order, and for sanctions.[4] Finally, Defendants move for a stay of proceedings pending the resolution of Plaintiff's certification motion and Defendants' motion for judgment on the pleadings.[5]

For the following reasons, the Court **CONDITIONALLY CERTIFIES** a collective action and **APPROVES** Plaintiff's proposed notice and procedures. The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to amend the complaint. The Court also

[1] Doc. 28. Defendants oppose. Doc. 36. Plaintiff replies. Doc. 38.
[2] Doc. 33. Defendants oppose. Doc. 39. Plaintiff replies. Doc. 43.
[3] Doc. 23. Plaintiff opposes. Doc. 30. Defendants reply. Doc. 32.
[4] Doc. 34. Plaintiff opposes. Doc. 37. Defendants reply. Doc. 41.
[5] Doc. 31.

**DENIES** Defendants' motion for partial judgement on the pleadings, **DENIES** Defendants' motion to strike Plaintiff's consent forms, for a protective order, and for sanctions. Finally, the Court **DENIES** Defendants' motion to stay proceedings.

## I. Background

Defendants DenOne, LLC, Nelda LLC, and Erick Martinez own and operate an Ohio Denny's restaurant franchise. For twenty-five years, Plaintiff Barbara Callaway has worked as a server at a Defendant-run Denny's restaurant in Independence, Ohio.[6]

Plaintiff Callaway states that Defendants pay her $4.15 an hour.[7] She also states that she has worked overtime and that Defendants currently pay her a $7.80 per hour overtime rate.[8] She also alleges that Defendants did not notify her that she was being paid under the FLSA tip-credit provision.[9]

Plaintiff Callaway alleges that Defendants require her and other servers to perform various non-tipped duties. She claims her non-tipped duties include filling condiment caddies, cutting fruit, wiping down tables, sweeping floors, restocking food and dry goods, washing dishes, and rolling silverware. Additionally, Plaintiff says that servers are required to prepare side and entrée salads, prepare and plate desserts, make milkshakes, bake biscuits, cut fruit, and prepare specialty pancake creams.[10] Further, Plaintiff states that she is required to prepare online carryout and delivery orders in response to phone, web, and internet application orders.[11] She states that the tips for these orders are paid to drivers

---

[6] Doc. 28-3 at 1.
[7] *Id.* at 2.
[8] *Id.* Plaintiff states that she was previously paid $6.06 an hour in 2016, $6.16 an hour in 2017, and $6.23 an hour in 2018.
[9] Doc. 12 at 12.
[10] Doc. 28-3 at 3
[11] *Id.* at 4.

instead of servers. Finally, Plaintiff states that she and other servers regularly perform detail cleaning tasks, such as: cleaning window sills, light fixtures and blinds; sweeping, vacuuming and mopping floors; dusting laps, light fixtures and blinds; cleaning and restocking the expo line; cleaning soda and juice machines; and cleaning and polishing steel surfaces throughout he restaurant.[12] Plaintiff estimates that that these non-tipped duties are "at least fifty percent" of working time.[13]

Plaintiff also submits sworn Denny's employee declarations from employees working at the Independence,[14] North Olmstead,[15] Willoughby,[16] Akron, North Canton, and Cleveland[17] Denny's locations. These declarations generally state that working conditions are similar across Defendant-owned Denny's locations. Further, each server states they are paid a sub-minimum wage, that they devote a significant portion of their workday—typically over fifty percent—to nontipped side work, and that Defendant did not notify them that they were paid under the FLSA tip-credit provision.

## II. Discussion

The FLSA requires that employers pay employees a minimum wage.[18] The FLSA's "tip-credit" provision, however, permits the employer to pay "tipped employees"[19] a

---

[12] *Id.* Plaintiff also submits a checklist from Denny's training materials listing various "deep cleaning" tasks. Doc. 28-6.
[13] Doc. 28-3 at 4.
[14] Doc. 28-7. Ms. Bellante's declaration states that she was employed as an assistant manager from 2010 until 2012 before stepping down to a server role.
[15] Doc. 28-8.
[16] Doc. 28-9.
[17] Doc. 28-11. Ms. James's declaration states that she also sometimes works as a "Unit Aide," a staffer who assumes Assistant Manager duties when none is on shift.
[18] 29 U.S.C. § 206(a).
[19] A "tipped employee" is one "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

below-minimum wage rate in certain situations.[20] Under this tipped employee exemption, an employer may "claim a partial credit against its minimum wage obligation to a tipped employee based on tips received by an employee."[21] To qualify for this below-minimum wage rate, the employer must notify employees paid under this provision.[22] The employer shoulders the burden of showing that this FLSA exception applies.[23]

### A. The Court Conditionally Certifies a Collective Action

Plaintiff moves to certify a conditional collective action of

> All individuals who worked at any time during the past three years at any restaurant owned or operated by Defendants in the job position of server and who were paid for their work on an hourly basis according to the tip credit provisions of the FLSA, (i.e. an hourly rate less than the applicable minimum wage, excluding tips).[24]

"Similarly situated" employees may bring a collective action under the FLSA.[25] To determine whether the employees are similarly situated, the Court considers the "factual and employment settings of the individual[ ] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action."[26]

The Court uses a two-step certification process. At this initial "notice" stage, a plaintiff must make a "modest factual showing" that "his position is similar, not identical, to

[20] *See* 29 U.S.C. § 203(m); 29 C.F.R. §§ 531.50-531.59.
[21] Department of Labor, *Field Operations Handbook* § 30d ("FOH").
[22] *See* 29 C.F.R. § 531.54.
[23] *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196 (1974) (noting the "general rule" that "application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof").
[24] Doc. 12 at 11.
[25] 29 U.S.C. § 216(b).
[26] *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) (alterations in original) (quoting Charles Alan Wright *et al.*, 7B *Fed. Prac. & Proc. Civ.* § 1807 (3d ed.)), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

the positions held by putative class members."[27] This is a "fairly lenient" standard.[28] At the second stage, after discovery, the Court examines the factual situation of collective action employees more closely.[29]

Plaintiff states that she was paid a sub-minimum wage. She alleges that other servers were similarly situated and that other servers had similar job responsibilities.[30] Plaintiff also submits five declarations from current and former Denny's servers, unit aids, and assistant managers.[31] These declarations state that Denny's servers were paid at a sub-minimum wage; that servers were not notified of the tip-credit provision; and that the company required servers to perform significant amounts of non-tipped work. Further, Plaintiff Callaway's declaration describes a staff meeting at which Defendant Martinez stated that working conditions at his restaurants were "the same across the board."[32]

The Court finds that Plaintiff has made the required factual showing that she is similarly situated to potential class members.

Defendants resist conditional certification. First, they argue that certification is improper because Plaintiff has not shown that she "suffer[ed] from a single, FLSA-violating policy."[33]

---

[27] *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-7 (6th Cir. 2006).
[28] *Id.* at 547 (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000)). Defendants argue that a more demanding "modest plus" factual standard should apply here. Under this standard, the Court would "assure that there is some factual basis for plaintiffs' claims before allowing plaintiffs to send opt-in notices." *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d. 819, 823 (N.D. Ohio 2011). The Court does not agree with Defendants. The "intermediate" or "modest plus" standard is appropriate where parties have "conducted several months of limited discovery on the certification issue." *Id.* at 826. Here, there has been little discovery apart from Plaintiff's deposition and disclosure of some employment records.
[29] *Comer*, 454 f.3d at 547.
[30] Doc. 28-3.
[31] Docs. 28-7 through 28-11.
[32] Doc. 28-3.
[33] Doc. 36 at 12 (quoting *O'Brien*, 575 F.3d at 585).

Plaintiff does not need to show that she suffered from a single policy. The Sixth Circuit rejected this argument in *O'Brien v. Ed Donnely Enterprises*, the case Defendants selectively cite in support of this argument.[34] What *O'Brien* says is that showing a unified policy is *one way* to show that a plaintiff and the class are similarly situated. But *O'Brien* also says that collective action plaintiffs could be similarly situated even without such a unified policy.[35]

Second, Defendants argue that certification is improper because the Court would need to conduct individualized inquiries into the amount of side work performed by each collective action member. Again, *O'Brien* explicitly held that the need for individualized inquiry is inherent in the FLSA collective-action mechanism: "a collection of individual analyses is required of the district court. Under the FLSA, opt-in plaintiffs only need to be 'similarly situated.'"[36]

Finally, Defendants argue certification is improper because Plaintiff Callaway voluntarily performed non-tipped side-work. They point to passages in her deposition in which she states that she "took it upon herself" to make sure that the restaurant was clean[37] as evidence that Defendants did not require her to perform side work.

Standing alone, these statements do not show that Defendants did not require Plaintiff to perform non-tipped work. It is unsurprising that a 25-year Denny's veteran

---

[34] *O' Brien*, 575 F.3d at 584 (holding that "a unified policy of [FLSA] violations is not required" for certification). *See also Monroe v. FTS USA, LLC*, 860 F.3d 389, 403 (6th Cir. 2017) ("[N]either the statutory language nor the purposes of FLSA collective actions require a violating policy to be implemented by a singular method.").

[35] *O' Brien*, 860 F.3d at 585. ("[P]roof of a violation as to one particular plaintiff does not prove that the defendant violated any other plaintiff's rights under the FLSA. Nevertheless, the plaintiffs are "similarly situated" according to § 216(b).").

[36] *Id.* at 584.

[37] Doc. 36-2 at 3.

would perform tasks without explicit instructions from superiors.[38] Further, Defendants to not explain why Plaintiff's cleaning initiatives would be relevant to the question of whether she is "similarly situated" to collective action members.

**B. The Court Approves Plaintiff's Proposed Notice and Opt-In Procedure**

Plaintiff submits a proposed notice and opt-in form.[39] Defendant objects to two aspects of the notice. First, Defendant objects that the notice is titled "Unpaid Wages Lawsuit." Second, Defendant complains that the notice does not advise potential plaintiffs that they could be partially responsible for Defendants' costs. In response to these objections, Plaintiff submits a revised notice titled "Minimum Wage & Overtime Lawsuit" with a sentence stating that "[i]f [Plaintiffs] lose the lawsuit, you will not receive any payment and it is possible that you could be liable for costs."[40] The Court finds that the notice, as amended, accurately describes the suit and preserves judicial neutrality.[41]

After Plaintiff submitted their proposed notice, Defendant's payroll company mailed checks to Plaintiff Callaway and another opt-in Plaintiff purporting to correct overtime wage underpayments.[42] Plaintiff moves to include supplemental notice language stating that "You are still eligible to opt-in to this Lawsuit even if Defendants have already contacted you recently or sent you a check for unpaid overtime."[43] Because the Court finds that this supplemental language is an accurate statement of the recipients' rights but should

---

[38] Additionally, the Denny's deep cleaning checklist submitted with Plaintiff's motion dispels any doubt that the work was essentially voluntary. *See* Doc. 28-6.
[39] Docs. 28-13, 28-14.
[40] Doc. 38-1.
[41] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.").
[42] Doc. 44-1.
[43] Doc. 44. Defendant opposes. Doc. 46. Plaintiff replies. Doc. 47.

be partially changed, the Court grants Plaintiff's motion to supplement her proposed notice with the following language: "You are still eligible to opt-in to this Lawsuit even if Defendants have already sent you a check for unpaid overtime."

Plaintiff wishes to contact potential opt-ins via mail, and asks that potential members be given 60 days to opt in. Plaintiff also asks to distribute a "reminder" mailing 30 days into the opt-in period. The Court finds that this procedure is appropriate.

### C. The Court Denies Plaintiff's Motion for Leave to Amend the Complaint

On November 30, 2018, the Court issued a scheduling order setting November 30 as the complaint amendment deadline.[44] On December 28, Plaintiff moved under federal Rules 15(a)[45] and 16(b)[46] for leave to amend the complaint, adding an additional count alleging that Defendants did not compensate them for off-the-clock work. Plaintiff also sought to join Northern Ohio Restaurant Group, LLC and DENMAR Restaurant Group, LLC as party Defendants. Plaintiff alleges that these two entities are Denny's franchises owned and operated by Defendant Erick Martinez.

Under Rule 16(b)(4), a party may move to modify the scheduling order "for good cause and with the judge's consent."[47] The party must first meet this requirement before the Court considers whether Rule 15(b) permits amendment.[48] In determining whether the party has shown good cause, the Court considers potential prejudice to the nonmoving party.[49]

---

[44] Doc. 20.
[45] Fed. R. Civ. P. 15(a).
[46] Fed. R. Civ. P. 16(b)(4).
[47] *Id.*
[48] *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).
[49] *Id.*

The Court finds that Plaintiff has not shown good cause to add additional claims, because she knew the factual bases of her proposed amendments before the amendment deadline. Plaintiff Callaway states that new information regarding her off-the-clock work first came to light at her deposition. This does not make sense, as Plaintiff Callaway herself knew of this uncompensated work and she could have included these allegations in her original complaint or first amended complaint. The Court finds that Plaintiff has shown good cause to add Northern Ohio Restaurant Group, LLC and DENMAR Restaurant Group, LLC as party defendants, because she promptly moved to amend her complaint after discovering the factual basis for these additions. Plaintiff states that she first learned of the additional restaurant entities upon receipt of an employee handbook at her deposition on December 13, 2018.[50] The Court also finds that Plaintiff's amendment is permissible under Rule 15(a)(2) because it promotes judicial economy and prevents piecemeal litigation.[51]

Thus, the Court denies Plaintiff's motion to amend the complaint. It does so without prejudice to bring these claims in a later action.

### D. The Court Denies Defendants' Motion for Partial Judgment on the Pleadings

Defendants move for partial judgment on the pleadings for Counts I, II and III of Plaintiff's complaint. The Court uses the same standard as a Rule 12(b)(6) motion to dismiss.[52] The Court construes the complaint in the light most favorable to the Plaintiff and accepts all well-pled allegations as true.[53]

---

[50] Doc. 33 at 2. Defendants counter that Plaintiff acknowledged receipt of this handbook in 2010 at her deposition. Doc. 39-2 at 3. However, Plaintiff persuasively argues that the handbook shown to her was dated August 2018 and could not have been the same one given to her in 2010. Doc. 43 at 4.

[51] *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend the complaint] where justice so requires.").

[52] *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).

[53] *Id.*

i) Auer Deference

Defendants move for judgment on complaint counts II and III, which allege that Plaintiff performed duties unrelated to her tipped occupation and that she also spent over 20% of her workweek performing nontipped duties related to her tipped occupation.

Defendants argue that the Court should defer under *Auer v. Robbins* to a new Department of Labor interpretation of its tip-credit regulation.[54] Defendants contend that Plaintiff's complaint does not state a claim under this new interpretation.

The FLSA tip-credit exemption applies to tipped employees. The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."[55] In 1967, the Department of Labor issued a regulation explaining how this definition applies to employees working "dual jobs"—workers who engage in both tipped and nontipped work. The 1967 regulation states that:

> In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.[56]

---

[54] 519 U.S. 452, 461 (1997).
[55] 29 U.S.C. § 203(t).
[56] 29 C.F.R. § 531.56(e).

Under *Auer v. Robbins*, the Court is required to give controlling weight to an agency's interpretation of its own ambiguous regulations unless that interpretation is "plainly erroneous or inconsistent with that regulation."[57] The Court finds that the regulation is ambiguous, because it describes a "waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and *occasionally* washing dishes."[58] What is "part of the time" or "occasionally" is not obvious.[59] Further, the regulation does not unambiguously specify which tasks are "related" to the tipped occupation.[60] Thus, the Court should defer to the agency's interpretation unless it is plainly erroneous or contrary to the regulation.

The interpretive history of this regulation is relevant to the *Auer* deference question. Since 1976, the Department of Labor has issued guidance letters interpreting this dual-job regulation. In 1988, the Department of Labor codified this guidance in its Field Operations Handbook. Handbook Section 30d00(f) interpreted this regulation to "permit[] the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee."[61] The manual establishes a 20% cap on tip related duties: "where the facts indicate that tipped employees spend a substantial

[57] *Auer*, 519 U.S. at 461.
[58] 29 C.F.R. § 531.56(e) (emphasis added).
[59] *See Marsh v. J. Alexander's LLC*, 905 F.3d 610, 624 (9th Cir. 2018) (en banc) (holding that "part of the time" and "occasionally" are ambiguous temporal terms).
[60] 29 C.F.R. § 531.56(e) ("[A dual job] is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. *Such related duties* in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.).
[61] FOH 30d00(f)(2).

amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing [duties related to their tipped occupation], no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance."[62]

This "80/20 rule" interpretation stood for over thirty years,[63] and the Department of Labor recently defended this interpretation in FLSA litigation in amicus briefs to the Eighth, Ninth, and Tenth circuits.[64]

On November 8, 2018—several weeks before this suit but well after the alleged FLSA violations—the Department of Labor changed course. It issued an opinion letter changing the 80/20 framework of its previous guidance.[65] The November 2018 letter re-issued verbatim an interpretive letter issued by outgoing Wage and Hour Administrator Alexander Passantino in January 2009.[66]

Under the new 2018 interpretation, employers are instructed to consult the "Tasks" section of the Occupational Information Network ("O*NET"), an online job duty database.[67] If a duty is listed as "core" or "supplemental" to the tipped occupation in this database, then it "shall be considered directly related to the tip-producing duties" of the job and "[n]o limitation shall be placed on the amount of these duties that may be performed . . . as long as they are performed contemporaneously with the duties involving direct

---

[62] FOH 30d00(f)(3).
[63] With one three-month exception described below.
[64] *See Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 877 (8th Cir. 2011); *Marsh v. J. Alexander's LLC*, 905 F.3d 610, 626 (9th Cir. 2018); *Romero v. Top-Tier Colorado LLC*, 849 F.3d 1281, 1282 (10th Cir. 2017).
[65] U.S. Department of Labor Wage and Hour Division, Opinion Letter FLSA2018-27 (Nov. 8, 2018), https://www.dol.gov/whd/opinion/FLSA/2018/2018_11_08_27_FLSA.pdf.
[66] U.S. Department of Labor Wage and Hour Division, Opinion Letter FLSA2009-23 (Jan. 16, 2009). This letter was withdrawn on March 2, 2009.
[67] http://online.onetcenter.org.

service to customers or for a reasonable time immediately before or after performing such direct-service duties."[68] Employers may not take a tip credit for tasks not listed on the O*NET task list.

This case highlights troublesome aspects of the *Auer* doctrine. *Auer* has received significant criticism because Auer deference allows an agency to make retroactive rule changes through informal guidance, circumventing the Administrative Procedure Act's notice-and-comment requirements.[69] Here, there are significant signs that the new letter does not "reflect the agency's fair and considered judgment on the matter in question."[70]

First, the new letter reverses a 30-year-old agency policy. The Supreme Court has cautioned that deference may be inappropriate where the agency's interpretation reverses a settled interpretive position,[71] and at least one district court has already refused to give *Auer* deference to the 2018 guidance letter for this reason.[72]

The November 2018 guidance timing also calls the letter's interpretive character into question. The 2018 guidance largely reinstated the 2009 letter. That 2009 letter was issued by an outgoing presidential administration and was withdrawn when the new administration took office two months later. That the issuance of this letter coincided with

---

[68] *Id.*

[69] *See Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1999, 1211-12 (2015) (Scalia, J., dissenting) ("By supplementing the APA with judge-made doctrines of deference, we have revolutionized the import of interpretive rules' exemption from notice-and-comment rulemaking. Agencies may now use these rules not just to advise the public, but also to bind them. After all, if an interpretive rule gets deference, the people are bound to obey it on pain of sanction, no less surely than they are bound to obey substantive rules, which are accorded similar deference. Interpretive rules that command deference do have the force of law.").

[70] *Auer*, 519 U.S. at 462.

[71] *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (withholding *Auer* deference where Department of Labor changed longtime interpretation).

[72] *See Cope v. Let's Eat Out, Inc.*, 354 F. Supp. 3d 976 (W.D. Mo. 2019).

a change in administration strongly suggests that the change is a matter of policy, not an effort to determine the meaning of the regulation.[73]

Finally, the chief rationale for the *Auer* deference is absent here. The *Auer* doctrine stems from the commonsense idea that the agency, as drafter, is in the best position to know what the agency intended when it wrote a regulation. In this case, it is unlikely that the drafters of the 1967 dual-jobs regulation played any role in the new guidance.

For these reasons, the Court is hesitant to defer to the agency in this case. The Court notes that this term the Supreme Court has agreed to consider overruling *Auer.* [74]

The court does not need to resolve the *Auer v. Robbins* deference issue here. Assuming—for the purposes of this motion only—that the 2018 letter merits deference, the Court would still deny Defendant's motion. Count II of the complaint alleges that Plaintiff spent a significant amount of time "preparing delivery orders Uber Eats, Grub Hub and Door Dash,"[75] and this duty does not appear on the O*Net task list. Count III of the complaint alleges that Plaintiff spent over 20% of her workweek performing tasks that appear on the O*Net list.[76] Reading the complaint in the light most favorable to the Plaintiff, the volume of the alleged side-work suggests that it was not done "for a reasonable time immediately before or after performing such direct-service duties."[77]

[73] The timing of the November 2018 guidance letter does not, itself, raise the prospect of political maneuvering, as it was issued several years into the current administration. But the circumstances of the 2009 letter strongly suggest that the interpretation was adopted for political purposes.
[74] *See Kisor v. Wilkie*, 139 S. Ct. 657 (2018) (granting certiorari on the question of whether *Auer* should be overruled).
[75] Doc. 12 at 14.
[76] *Id.* at 16.
[77] Opinion Letter FLSA2018-27 at 1.

For these reasons, the Court denies Defendant's motion for judgment on counts II and III of the complaint.

ii) Tip-Credit Notice Claims

Defendant also moves for judgment on the first count of Plaintiff's complaint, which alleges that Defendants failed to provide tip credit notice.[78] In their answer to Plaintiff's first amended complaint, Defendant attaches a written notice acknowledgment the Plaintiff apparently signed and dated.[79] The Court agrees that this evidence may ultimately doom Plaintiff's notice claim. However, Defendants have not provided signed acknowledgments for the opt-in Plaintiffs in this suit. Accordingly, the Court denies Defendants' motion for judgment on Count I of the complaint.

**E. The Court Denies Defendants' Motions to Strike Consent Forms, for a Protective Order, and for Sanctions**

i) Plaintiff Counsel's Website

Defendants move to remedy alleged litigation misconduct. First, Defendants move to strike several consent-to-sue forms Plaintiff submitted earlier in this litigation.[80] The Defendants broadly allege that Plaintiff's counsel maintained a website (www.dennyslawsuits.com) from July 27, 2018 to December 4, 2018 containing false and misleading information about this suit. Because consents obtained before December 4 may have been obtained because of improper information, the Defendants ask the Court to strike the forms obtained before that date.

[78] Doc. 12 at 12.
[79] Doc. 17-1.
[80] Docs. 3, 9, 14, 24, 27.

The first allegedly misleading website statement is "[t]he more servers and former servers that join forces to pursue their claims against Denny's, the greater our likelihood of success at recovering lost wages and motivating change becomes."[81] Defendants argue that this statement falsely suggests that Defendants' legal liability turns on the number of plaintiffs who join the suit.

This statement is not seriously misleading. While it could be read as Defendants suggest, one could also read the statement to truthfully say that plaintiffs will have more settlement leverage if more servers join the suit. In general, it is not misleading to say that the likelihood of a favorable result increases when more plaintiffs join the suit. Indeed, this is likely the very reason that Defendants have contested class certification and sought to strike existing consents.

Second, Defendant complain that a website video includes Plaintiff's counsel stating that "when your employer has you doing [side] work without the opportunity to earn tips, the law basically says that you have to be paid the full minimum wage for that time."[82] Defendants contend that this statement misstates the law because it fails to note that a certain amount of nontipped side work is permissible under the FLSA.

Admittedly, the statement is not a precise statement of the law. But the statement targets the general public and is prefaced by the caveat "the law basically says," which should give its audience on notice that what follows is not a precise account of the legal landscape.

---

[81] Doc. 34-2 at 7.
[82] *Id.* at 12.

Because neither alleged misstatement is sufficiently misleading, the Court denies Defendants' motion to strike consent forms.

ii) Plaintiff Counsel's Alleged Visits to Denny's Restaurants

Defendants also allege that Plaintiff and her counsel have conducted meetings at Defendants' restaurants and Plaintiff counsel improperly asked for servers to join this suit. They seek a protective order prohibiting Plaintiff's counsel from visiting the restaurants. Further, Defendants allege that their employees have become insubordinate and inattentive because of these meetings with Plaintiff's counsel. Defendants claim that this insubordination has damaged the business to the tune of $25,000 and seek sanctions in this amount.

These are serious allegations. But upon closer examination, Defendants' motion itself presents demonstrable falsehoods intended to mislead the Court.

Defendants submit a sworn declaration from Defendant Martinez, the owner and operator of the DenOne Denny's restaurants. In that declaration, Martinez says he learned that Plaintiff counsel James Simon approached servers during work hours and solicited them to join this suit. He also states that during these meetings, Simon distributed a business card, and that "a copy of the business card is attached as Exhibit 4" to the declaration.[83]

This statement represents Exhibit 4 is a copy of a business card that Plaintiff Attorney Simon distributed at Martinez's restaurant.[84] If that were true, then it would support his allegations that Plaintiff's counsel had visited his restaurants and given his card to servers.

---

[83] Doc. 34-2 at 2.
[84] *Id.* at 13.

But it is not. Exhibit 4 is an image taken from Plaintiff's counsel's Facebook page, originally posted in 2014.[85] Caught in an apparent attempt to defraud the Court, Defendants do not explain why they represented that a five-year-old Facebook image was a business card that Plaintiff's counsel left at Martinez's restaurant. Instead, Defendants brazenly press onward, contending that Plaintiff's counsel should be sanctioned for maintaining a Facebook page containing false information.[86]

Given Defendant Martinez's apparent willingness to mislead the Court, it gives the other allegations in his declaration little credence. At any rate, the other evidence is unconvincing on their own terms.

For example, Martinez states that Plaintiff's counsel Cliff Bendau sent unsolicited emails to his employees, pointing to an email from Bendau to server Bonique Simpson.[87] But the evidence suggests that Simpson contacted Bendau, not the other way around.[88]

Martinez also recounts a conversation with opt-in Plaintiff Dina Bellante, in which Bellante stated that Plaintiff's lawyers had "gathered everyone at one of my restaurants and told all my servers that they must join the lawsuit so they could get more money." Because this statement is double hearsay, and because Bellante denies that this meeting took place,[89] the Court finds this allegation unbelievable.

---

[85] The desk in the background of this Facebook image is unmistakably the desk in the background of Exhibit 4.
[86] Doc. 41 at 3.
[87] *See* Doc. 34-2 at 2. ("Between August 2018 and at least October 2018, Plaintiff's counsel also sent unsolicited emails to employees of DenOne, soliciting them to join the lawsuit. A copy of an email from Plaintiff's counsel Cliff Bendau to [declarant] Bonique Simpson is attached to this Declaration as Exhibit 6").
[88] The email begins "Bonique, it was a pleasure speaking with you to day," and attaches a retention agreement. This indicates that Bendau was responding to a previous discussion with Simpson. Further, the statement from Simpson that Defendants include with their motion states "I contacted the lawyer Clifford Bendau"—not the other way around. Doc. 34-2 at 14.
[89] *See* Doc. 37-1 at 2.

Defendants' motion for a protective order and for sanctions is denied.

### F. The Court Denies Defendants' Motion to Stay Proceedings

Defendants move to stay resolution of Plaintiff's motion for conditional certification pending Defendants' motion for judgment on the pleadings. Because this order disposes of these motions, the Court denies Defendants' motion to stay as moot.

## III. Conclusion

For these reasons, the Court conditionally **CERTIFIES** a collective action and **APPROVES** Plaintiff's proposed notice and procedures. The collective action includes:

> All individuals who worked at any time during the past three years at any restaurant owned or operated by Defendants in the job position of server and who were paid for their work on an hourly basis according to the tip credit provisions of the FLSA, (i.e. an hourly rate less than the applicable minimum wage, excluding tips).

The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to amend the complaint. The Court also **DENIES** Defendants' motion for partial judgement on the pleadings. The Court **DENIES** Defendants' motions to strike Plaintiff's consent forms, for a protective order, and for sanctions. Finally, the Court **DENIES** Defendants' motion to stay.

IT IS SO ORDERED.

Dated: March 8, 2019

*s/ James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE