UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------------

BARBARA CALLAWAY, *on behalf of*    :
*herself and all others similarly situated*,    :

:          CASE NO. 1:18-cv-1981

Plaintiffs,    :

:

vs.    :          OPINION & ORDER

:          [Resolving Doc. 52]

DENONE LLC, *et al.*,    :

:

Defendants.    :
--------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs, servers at Northern Ohio Denny's restaurants, bring this suit against

Defendants alleging Fair Labor Standards Act ("FLSA") violations.  On March 8, 2019, the

Court conditionally certified the suit as a collective action.  Defendants now move to

decertify the collective action.[1]

For the following reasons, the Court **DENIES** Defendants' motion.

## I.    Background

Defendants operate a Northern Ohio Denny's restaurant chain.  Plaintiffs work or

formerly worked as servers at Defendants' restaurants.  They claim that they Defendants

paid them a sub-minimum wage in violation of the FLSA.  They also argue that the FLSA's

tip-credit provision, which allows an employer to partially credit employee tips towards its

minimum-wage obligations, does not apply.

Plaintiffs allege three categories of FLSA violations: first, they claim that Defendants

did not notify them that they were being paid under to the FLSA's tip-credit provisions.

Second, they allege that they performed excessive nontipped side work, preventing

---

[1] Doc. 52.  Plaintiffs oppose.  Doc. 56.  Defendants reply.  Doc. 64.

Case No. 1:18-cv-1981
Gwin, J.

Defendant from using the FLSA's tip-credit provision.[2]  Third, they allege that Defendants

unlawfully used their tip-credit pay rate to calculate their overtime pay.

On March 7, 2019, the Court conditionally certified a collective action of:

All individuals who worked at any time during the past three years at any
restaurant owned or operated by Defendants in the job position of server and
who were paid for their work on an hourly basis according to the tip credit
provisions of the FLSA, (i.e. an hourly rate less than the applicable minimum
wage, excluding tips).[3]

Defendants now move to decertify the collective action.

## II.    Discussion

Employees may bring a collective action to enforce the Fair Labor Standards Act "on

behalf of . . . themselves and other employees similarly situated."[4]  To determine whether

the employees are similarly situated, the Court considers "(1) the factual and employment

settings of the individual[] plaintiffs, (2) the different defenses to which the plaintiffs may be

subject, and (3) the degree of fairness and procedural impact of certifying the action as a

collective action."[5]  The "heart of the matter" is whether the collective plaintiffs can bring

their claims "based on representative, rather than personal, evidence."[6]  Plaintiffs shoulder

the burden of showing they are similarly situated.[7]

---

[2] Plaintiffs allege two claims here: that they performed excessive nontipped work that is "related" to serving, and excessive "unrelated" side work.  The side work includes tasks such as filling condiment caddies, cutting fruit, wiping down tables, sweeping floors, restocking food and dry goods, washing dishes, and rolling silverware, as well as cleaning tasks such as cleaning window sills, light fixtures and blinds; sweeping, vacuuming and mopping floors; dusting lamps, light fixtures and blinds; cleaning and restocking the expo line; cleaning soda and juice machines; and cleaning and polishing steel surfaces throughout the restaurant.
[3] Doc. 63 at 4.
[4] 29 U.S.C. § 216(b).
[5] *Pierce v. Wyndham Vacation Resorts, Inc.*, 922 F.3d 741, 745 (6th Cir. 2019) (alteration in original) (internal quotation marks omitted).
[6] *Id.*
[7] *Id.*

Case No. 1:18-cv-1981
Gwin, J.

Certification typically proceeds in two stages.  At the first "notice" stage, the plaintiff must make a "modest factual showing" that their position is like the positions held by putative collective members.[8]  At this second stage, following discovery, "trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated."[9]

### A.  Plaintiffs' Factual and Employment Settings[10]

Plaintiffs, who all held the same job title, have submitted declarations stating that Defendants regularly required them to perform substantial amounts of nontipped side work.[11]  The declarations from servers at different locations state working conditions are similar across Defendant-owned restaurants.  Additionally, Plaintiffs submit a Defendant notice recommending that servers pick up shifts at neighboring Denny's restaurants, suggesting that job duties were similar across locations.[12]

Further, though Plaintiffs are not required to demonstrate that their claims flow from a single FLSA-violating policy,[13] they provide substantial evidence that Defendants had a standard policy requiring Plaintiffs perform nontipped side work each shift.  Defendants' training materials explicitly detail how servers should be trained to perform the side work described in the complaint.[14] They also include detailed side work maps stating that "all

---

[8] *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006).
[9] *Id.*
[10] On this factor, the parties only dispute whether Plaintiffs are similarly situated as to their side-work claims.
[11] *See* Docs. 28-7 through 28-11.
[12] Doc. 56-10.
[13] *See O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) (explaining that showing a single policy is one way among others to prove that plaintiffs are similarly situated).
[14] *See* Doc. 56-11 at 16 (Denny's training manual, detailing that servers should be trained in "side work duties," "restocking supplies," and "daily cleaning tasks").

-3-

Case No. 1:18-cv-1981
Gwin, J.

side work **must** be completed before leaving your shift . . . and checked by management team."[15]  Opt-in Plaintiffs testified in their depositions that they consulted these side work checklists when performing the work on shift.[16]

Considering Defendants' own training materials and the Plaintiffs' consistent testimony, Defendants' contention that "DenOne's restaurants do not use a standardized checklist or form for assigning side work to each server on a regular basis, and DenOne does not have a policy regarding assigning side work to servers"[17] is not believed.

Defendants offer two arguments in support of decertification.  Defendants' first argument is that the opt-in Plaintiffs' deposition testimony "refute[s] many, if not all, of the allegations in the complaint," because their disposition testimony differed "as to what each of them *considered* to be work for which they should be paid the tip-credit minimum wage."[18]  This argument is completely irrelevant.  FLSA liability and collective action certification do not depend on individual employees' personal views about how they should be compensated.

Defendants also argue that Plaintiffs are not similarly situated because the amount of nontipped side work varied.  The deposed opt-in Plaintiffs generally agreed that the quantity of side work varied depending on the manager, shift, location, day, staffing, and

---

[15] Doc. 56-9.

[16] *See* Doc. 52-4 at 2 (Bellante Dep.) ("We had one big side work book that was broken up into section depending on how many servers you had on.  And whatever section you were in, you were responsible.");
*Id.* at 22 (Bowser Dep.) ("[T]hey gave us a book . . . there is a list of things that need to be done on an entire page. . . . It was called the side work book."); *Id.* at 141 (Mulhall Dep.) ("All I know is that we had a side work book and that's what the book that we went by and that's what we had to do.").

[17] Doc. 52-1 at 2.

[18] Doc. 52 at 7.

-4-

Case No. 1:18-cv-1981
Gwin, J.

restaurant busyness.[19]  Plaintiffs argue that these variations do not matter, because

individual injury or damage differences are not a basis for decertification.

Plaintiffs are not quite right.  It is true that variability as to damages does not defeat

certification.  However, the amount of nontipped work is not just relevant to Plaintiffs'

damages—it also goes to liability, because the amount of the work will determine whether

the FLSA tip-credit exemption applies.

Despite this variability, the Court finds that the certification is appropriate because

courts regularly allow representative testimony about the number of hours worked in FLSA

collective actions.  For example, in *Pierce v. Wyndham Resorts*, the Sixth Circuit affirmed a

bench trial verdict where the plaintiffs testified regarding the average number of hours they

worked and described the basis of these estimates.[20]  The court found this testimony

sufficient to determine the average number of hours worked by members of the collective.

Here, Plaintiffs will be able to testify as to the average hours they spent doing side work

and explain the basis of this estimate.

In sum, this factor favors certification.  Plaintiffs describe consistent work

experiences and identify Defendant policies that apply across the collective.

### B.  Individual Defenses

Defendants argue that certification is inappropriate because they have

individualized defenses to Plaintiffs' claims.

---

[19] *See* Doc. 52 at 7 (summarizing deponents' testimony regarding the factors that influenced side work).
[20] 922 F.3d 741, 749 (6th Cir. 2019).  Although these estimates were used to calculate damages, *Pierce* supports the general proposition that Plaintiffs can offer representative testimony regarding hours worked on certain tasks.

Case No. 1:18-cv-1981
Gwin, J.

First, Defendants argue that they have three individual defenses regarding Plaintiffs'

claim that they performed excessive sidework unrelated to their server position.  First, they

did not assign unrelated tasks.  Second, they assert that "preparing silverware, making

coffee, or cleaning tables" are tasks related to serving guests.  Third, they "intend to assert

that, even if [these] tasks were performed, they did not exceed 20 percent of the

individuals' time."[21]

These arguments are not persuasive.  The question is not whether Defendants have

defenses to liability, but whether these defenses can be "adequately presented in a

collective forum."[22]  If certain tasks are "related" to serving, it will be for reasons that apply

uniformly for all collective action members.  If Defendants did not assign these tasks, or if

the tasks did not exceed twenty percent of the servers' time, Defendants can present

representative evidence at trial on this point.

Second, Defendants argue that they have an individualized defense regarding

Plaintiff Calloway because she allegedly stole Defendants' "confidential business

documents"—namely, take-out order receipts.  Further, they argue that other opt-in

Plaintiffs have credibility issues because they admitted in their depositions that they did not

accurately report their cash tips.

Some courts have refused certification where Plaintiffs' credibility issues

undermined the factual bases for certification.  However, none of the cases cited by

---

[21] Doc. 52 at 15.
[22] *Monroe v. FTS USA, LLC*, 860 F.3d 389, 406 (6th Cir. 2017).

Case No. 1:18-cv-1981
Gwin, J.

Defendants stand for the proposition that alleged untruthfulness in matters wholly collateral

to the litigation mandates decertification.[23]

    This factor also favors certification.

### C.  Fairness and Procedural Impact

    In enacting the FLSA's collective-action mechanism, Congress intended to facilitate

the consolidation of small-value claims that would be impractical to pursue on an

individual basis.  Pursuing this case as a collective action furthers this congressional policy

and thus favors class treatment.[24]  Further, judicial efficiency favors collective treatment

because Plaintiffs plausibly claim that Defendants' FLSA violations flow from uniform

policies across Defendant-owned restaurants.[25]

### III.    Conclusion

    For the foregoing reasons, the Court DENIES Defendants' motion to decertify the

collective action

    IT IS SO ORDERED.

Dated: June 26, 2019                                    s/      James S. Gwin
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE

---

[23] See *White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 377 (E.D. Mo. 2014) (decertifying collective action because Plaintiffs provided inconsistent testimony regarding tip-pooling practices at locations where they did not work); *Martin v. Citizens Fin. Grp., Inc.*, No. CIV.A. 10-260, 2013 WL 1234081, at *6 (E.D. Pa. Mar. 27, 2013) (holding that credibility disputes regarding whether plaintiffs were actually paid for overtime presented individualized defenses mandating decertification); *Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 302 (E.D. Pa. 2010) (inconsistent testimony regarding donning and doffing practices undermined their ability to present representative evidence); *Pacheco v. Boar's Head Provisions Co.*, 671 F. Supp. 2d 957, 964 (W.D. Mich. 2009) (inconsistencies in Plaintiffs' accounts of when they performed donning and doffing undermined allegations that there was a company-wide policy requiring off-the-clock work).
[24] See *Monroe*, 860 F.3d at 405 (fairness and procedural impact test was met because collective action "satisfies the policy behind FLSA collective actions and Congress's remedial intent by consolidating many small, related claims of employees for which proceeding individually would be too costly to be practical").
[25] *Id.* (collective action treatment furthers judicial efficiency where Plaintiffs allege a "single FLSA-violating" policy).